ORONOZ, PLAINTIFF AND APPELLEE, *v.* ROMÁN, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in an Action for the Division of Community Property.

No. 1680.—Decided December 14, 1917.

COMMUNITY PROPERTY—COMPLAINT.—After examining the complaint it was held that the facts stated therein were sufficient to constitute a cause of action for the division of community property.

ID.—JURISDICTION.—In an action brought in a district court for the division of community property the value of the property need not be alleged in order to give the court jurisdiction, for the district courts in Porto Rico are courts of general jurisdiction.

CONTINUANCE—EVIDENCE.—In order to comply with the provisions of section 202 of the Code of Civil Procedure it is not enough that the party moving for a continuance for lack of evidence file a verified motion alleging that the evidence was essential and could not be obtained notwithstanding his diligence and offer evidence in support of such allegations, but he must allege facts to show the essential importance of the evidence and also to show that he used due diligence to obtain the same.

JUDGMENT.—The better practice is to announce in open court the judgments rendered, but this is not an absolute requirement for the validity of the judgments.

COMPLAINT—AMENDMENT—DISCRETION OF COURT.—Courts have ample discretion to allow the plaintiff to amend his complaint at the trial, especially when the

amendment does not in any way change the terms in which the issue was first raised and there is not the slightest ground for the assumption that it would prejudice the defendant.

Community Property — Division of Property. — The real issue finally joined, argued and submitted by the parties in this case was whether or not the plaintiff owned 96 per cent of the property; whether or not the defendant was the owner of all of the property or of only 4 per cent of it, and whether, in the event that the issue be decided in favor of the plaintiff, the division of the property should be adjudged and in what form. *Held:* That in such circumstances the district court did not err in rendering judgment disposing of all the questions finally submitted to it.

Id.—Id.—Evidence.—In an action for the division of community property it is not a fundamental error to admit the testimony of witnesses familiar with the property for the purpose of showing its topographical conditions in order to decide whether the said property would deteriorate in value as a result of its division into two parcels.

The facts are stated in the opinion.

*Messrs. Juan García Ducós* and *Luis Llorens Torres* for the appellant.

*Messrs. Reichard & Reichard* for the appellee.

Mr. Justice del Toro delivered the opinion of the court.

The complaint in this case is entitled "For division of community property" and contains the following allegations:

(1) That the plaintiff and defendant are of age, etc.

(2) That the plaintiff and defendant are the only persons interested and are the owners in common and *pro indiviso* of 96 per cent and 4 per cent respectively, of the following-described property: (Here follows a description of a property of forty-six and one-half acres.)

(3) That the said property is free of all liens or encumbrances and that the interests of plaintiff and defendant are recorded respectively on pages 210 and 211 of Volume 35 of San Sebastián of the district registry of property.

(4) That neither the parties to this action nor their predecessors in interest have made any agreement or contract to maintain undivided the rural property described.

(5) That against the will of the plaintiff the defendant has taken possession of and has the use of the whole of the property described in the second count, receiving and ap-

propriating to his own use its fruits, rents, profits and products without delivering to the plaintiff the proportional part thereof belonging to him.

(6) That the defendant opposes the division of the common property and objects to its being adjudicated to one of the co-owners subject to the payment of an indemnity by him to the other.

(7) That a physical division of the property in question would result in a decreased and disproportionate value of the severed parts.

Based on these facts, the plaintiff prayed the court to order the division of the property, or, in case this could not be done, to order the sale thereof at public auction and the apportionment of the proceeds of the sale between the co-owners.

The defendant pleaded that the complaint did not state facts sufficient to constitute a cause of action and that the court was without jurisdiction because of the subject-matter. Both grounds of demurrer were overruled and the defendant filed an answer admitting the first and fourth counts of the complaint and denying the rest. As new matter he alleged, in synopsis, that he was in possession of the whole of the property and was the absolute owner thereof under title acquired at a public sale, the property having been conveyed to him as the result of a certain action which he brought against the former owner; that he and his predecessors in interest have been in possession for more than thirty years, and that if the plaintiff acquired the joint interest referred to in his complaint it was subsequent to the acquisition of title by the defendant and from persons who were neither the owners nor in possession of the property.

The issue being joined thus, the trial was set for August 31, 1916. On the said day the defendant moved for a continuance, the plaintiff objected and the court overruled the defendant's motion.

The plaintiff moved for leave to amend his complaint by

adding to the second count the words "valued at $3,000" and to the prayer the words "ordering its division in the manner in which it may deem proper." The defendant objected, but the court allowed the amendment.

The examination of the evidence then took place and finally the court rendered judgment adjudging "the severance of the community of real property prayed for" and ordering "the sale at public auction of the said realty and the corresponding proportional distribution of the proceeds between the parties to this action in the proportion of 96 per cent of the total value to the plaintiff and 4 per cent thereof to the defendant, without special imposition of costs."

The judgment appears "Rendered in chambers at Aguadilla, P. R., this second day of November, 1916," signed by the judge, certified to by the clerk and entered in the judgment docket of the court.

On December 2, 1916, the defendant appealed. The record then shows that on January 9, 1917, the judgment was read in open court in the presence of the attorneys for both parties and that on January 29, 1917, the defendant moved the court to reconsider and set aside its action, leaving in force the judgment as rendered, on the ground that the reading of the judgment in open court constituted an amendment made after the close of the term. The court overruled the motion of the defendant.

The transcript of the record having been filed in this court, a hearing on the appeal took place and the case was finally submitted for consideration and decision.

The appellant contends in his brief that the trial court erred: (1) In overruling the demurrer; (2) in overruling the motion for a continuance; (3) in rendering judgment in chambers; (4) in amending the judgment after the close of the term; (5) in tacitly passing upon a preference of titles in an action "for division of community property"; (6) in overruling the plea of prescription set up by the defendant; (7) in improperly weighing the evidence; (8) in allow-

ing the plaintiff to amend his complaint at the trial without notice to the adverse party, and (9) in admitting parol evidence to show the divisibility or indivisibility of a property.

1. Let us examine the first error. The complaint alleges, in synopsis, that the plaintiff and defendant are owners in common of a certain property and that the defendant has violated the community rules by taking possession of the property and appropriating to his own use the entire proceeds thereof, wherefore the plaintiff prays that the community be dissolved. If these facts are examined in the light of section 399 of the Civil Code, which provides that when the ownership of a thing or of a right belongs undividedly to different persons, it is held to be owned in common, and in the light of section 407 of the same code, which provides that no part-owner shall be obliged to remain a part of the common ownership, but that each of them may, at any time, demand the division of the thing held in common, it will be concluded without effort that the district court was justified in overruling the first ground of the defendant's demurrer.

Nor did it err in overruling the second ground, because, the District Court of Aguadilla being a court of general jurisdiction, it was not necessary to allege in the complaint the value of the property forming the subject-matter of the action in order to give the court jurisdiction. See the case of *Lowande* v. *García*, 13 P. R. R. 263, where this question is fully discussed.

2. The defendant moved for a continuance on the ground that he intended to introduce in evidence a certain certificate of the Treasurer of Porto Rico and the testimony of a witness, which evidence he had been unable to obtain notwithstanding the fact that he had exercised due diligence. The adverse party objected because, while it was claimed that the testimony of the witness was essential, no reasons were given for his failure to appear; and as to the certificate, because the defendant had had ample time to obtain it, notwithstanding which he was willing that the defendant should be given

time to produce it provided the trial were not postponed, inasmuch as he had brought all of his witnesses. The court overruled the motion for continuance.

A motion to postpone a trial on the ground of the absence of evidence, according to section 202 of the Code of Civil Procedure, can only be made upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it. ·

The motion of the defendant was verified and alleged that the evidence which he had been unable to obtain, notwithstanding his diligence, was essential. The following also appears in the bill of exceptions: "And he offered evidence in support of such allegations." But this is not enough. According to the law, he must allege facts in the motion to show that he used due diligence to obtain the same.

The appellant avers in his brief merely that the refusal to allow him to produce such important evidence prejudiced him greatly, but says nothing that would enable us to judge whether or not, in point of fact, the evidence was important.

3. The errors assigned under Nos. 3 and 4 may be considered together.

A judgment, as defined by law, is a final determination of the rights of the parties in an action or proceeding. Sec. 188 of the Code of Civil Procedure. The secretary must keep with the records of the court a book to be called the "Judgment Book," in which judgments must be entered, says section 231 of the said code.

In the present case the trial was had in open court and the case was submitted for decision. Later, the court rendered its judgment in writing, disposing definitely of the rights of the parties, and the secretary entered it in the judgment book. In our opinion the fact that the words "Rendered in chambers" appeared in the judgment is not important.

It is a good practice to announce in open court the judgments rendered, but this is not an absolute requirement for

the validity of the judgments. If the trial is duly held and the case submitted to the court, which later files its judgment in writing and the secretary enters it in the judgment book, all the statutory requirements are complied with.

4. The error assigned under No. 8 was not committed. Courts have ample discretion in matters of amendment. Besides, in this case the amendments were unnecessary and there is not the slightest ground for the assumption that they could prejudice the defendant. We have already said that the complaint was sufficient without stating the value of the property and that, admitting the allegations to be true, the plaintiff had a right to demand, as he did, that the property be divided. The addition to the prayer by way of amendment that the court should order the division to be made in such manner as it might deem proper, in no way varied the terms in which the issue was first raised. The rules governing the division of property held in common are fixed by statute. See secs. 400 *et seq.* and correlative sections of the Civil Code.

5. Errors 5, 6, 7 and 9, or those referring to the disposing of a question of preference of titles in this case, to the overruling of the defendant's plea of prescription, to the improper weighing of the evidence and to the admission of parol evidence to show the indivisibility of the property, will be considered jointly.

The complaint presents a case of division of property held in common. The answer, alleging as new matter the exclusive right of the defendant by virtue of the purchase of the entire property, presented the case under a different aspect.

In our opinion the question of whether the defendant properly classified the action which he brought in the District Court of Aguadilla is not of vital importance for the decision of the case. See *Aponte et al.* v. *Verdiales,* 24 P. R. R. 351. The plaintiff alleged that he owned 96 per cent of a certain rural property held in common with the

defendant, who in turn owned 4 per cent, and prayed for the division of the common property. The defendant alleged that he was the owner of not only 4 per cent but of the whole property. The issue was thus joined. This is not a special proceeding like unlawful detainer, for example, but an ordinary action. The defendant did not refuse to enter into an investigation of the titles. The evidence was ample and the real question at issue was well understood by both parties. The real question involved, discussed and submitted to the court by the parties in this case was whether or not the plaintiff owned 96 per cent of the property; whether or not the defendant was the owner of all of the property or of only 4 per cent of it, and whether, in the event that the issue were decided in favor of the plaintiff, the division of the property should be adjudged, and in what manner.

The plaintiff's evidence, both documentary and parol, shows that by the deed of partition of the estate of Rosa García executed before Notary Eusebio de Arce in San Sebastián on June 28, 1817, the property referred to in this action was conveyed to Antonio, Celestino, Cristina, Luisa and Victoriana Cardona y García, children of Rosa García. Antonio, Cristina, Luisa and Victoriana delivered possession of the property to their brother, Anacleto Cardona, so that he might provide for the support of Celestino Cardona, one of the owners in common who had become insane, with the products thereof. On September 26, 1901, said Celestino died unmarried and on October 29, 1903, his brothers and sisters Antonio, Cristina, Luisa, Victoriana and Anacleto were adjudged by the District Court of Mayagüez to be his heirs in the proportion of one-fifth each of the 20 per cent which belonged to Celestino. The shares of the joint owners were then as follows: Antonio, Cristina, Luisa and Victoriana, 24 per cent each, and Anacleto, 4 per cent. After the death of Celestino and the designation of heirs, Antonio, Cristina, Luisa and Victoriana allowed their brother Anacleto, who was poor, to continue to live on the property and use the products thereof

on condition that he should pay the taxes. The share of 24 per cent belonging to Antonio was awarded to his son, José Ramón Cardona Lugo, as shown by the deed of partition executed before Notary Blasco Pagán on February 2, 1915. The share of 24 per cent belonging to Cristina was awarded also to her son, José Torres Cardona, by the deed of partition executed before Notary José D. Rodríguez on February 4, 1915. Finally, by a deed of March 9, 1916, executed before Notary Arturo Reichard, Victoriana, Luisa and José Ramón Cardona and José Torres sold their common interests to plaintiff Joaquín Oronoz Rodón, who recorded his joint ownership of 96 per cent in the registry of property on March 18, 1916. The instruments to which we have previously referred were also recorded in the registry of property on January 7, 1916. As is seen, the plaintiff's evidence establishes a clear case in his favor. The defendant's evidence shows that on August 1, 1913, he brought suit against Anacleto Cardona to recover $1,800; that the defendant was summoned and failed to appear, whereupon judgment by default was rendered against him on December 13, 1913; that execution issued to satisfy the judgment and acting thereunder on March 6, 1914, the marshal sold at public auction the property involved in the present suit to defendant José Tomás Román as the property of the judgment debtor, Anacleto Cardona, and that Román instituted dominion title proceedings in December, 1914, to establish his ownership of the entire property, which proceedings were opposed by Luisa Cardona, José R. Cardona and José Torres and were pending at the time of the trial of this action.

The defendant attempted to show by other evidence that Anacleto Cardona owned the whole property. What may be considered the most material part of this evidence is the testimony of the said Anacleto Cardona, who first testified that the entire property belonged to his brother Celestino and then admitted that not only Celestino but his other brothers and sisters inherited it from their parents. He testified also

that about twelve years before and a few days after the death of Celestino his brothers and sisters executed a deed of sale of the property to him, but that he could not produce the same because he had lost it. The testimony of Anacleto, that the defendant continued to live on the property although it had been sold at public auction some three years previously, was contradicted by the sworn testimony of his sister Luisa Cardona.

Therefore the evidence of the defendant shows that the marshal sold him the whole property as belonging to Anacleto Cardona two years before this action was brought. The trial court reached the conclusion that there was evidence of fraudulent combination between the defendant and Anacleto Cardona, but we do not believe that the evidence is sufficient to show the existence of fraud. Let us start from the basis that the defendant acted in good faith.

By the purchase he acquired all the rights of Anacleto Cardona and nothing more. Was Anacleto Cardona the owner of the whole property or was he merely a joint owner with an interest of 4 per cent acquired by inheritance from his brother Celestino? The evidence on this point is altogether deficient. We have considered Anacleto's own testimony, which is vague and uncertain and was contradicted, moreover, by other testimony including that of his sister Luisa, as we have said.

As against this unsatisfactory evidence is the clear and complete chain of the plaintiff's title, which is recorded in the registry.

Under such circumstances the only conclusion which can be reached is that of the trial court, namely, that it was fully proved that the plaintiff is the owner of a joint interest of 96 per cent of the property in question and that the defendant owns another joint interest of 4 per cent.

The invalidity of the defendant's title to the whole of the property having been established and his title reduced to its proper proportions, we will revert to the simple case pre-

sented by the plaintiff in his complaint. An undivided property is owned in common by two persons, one of whom wishes to sever the. common ownership and prays for a division of the property.

Said division should be ordered. How? The plaintiff introduced parol evidence tending to show that the property would decrease in value if divided into two parts. Moreover, the court, accompanied by the parties, made an ocular inspection of the property. It seems that the property has a very narrow front on the highway and a division of it into two parts could not be made so as to provide a means of egress thereto from each. Based on the evidence, the court ordered the property to be sold and the proceeds distributed between the joint owners, as provided for by section 413 of the Civil Code.

We do not believe that the court erred in admitting the testimony of witnesses familiar with the property for the purpose of showing its topographical conditions, which the court also had occasion to observe for itself. We agree that experts might have thrown more light on the matter, but we do not believe that any fundamental error was committed.

In view of all the foregoing we are of the opinion that substantial justice has been done in this case, and, therefore, the judgment appealed from should be

*Affirmed.*

Justices Wolf and Hutchison concurred.

Chief Justice Hernández and Justice Aldrey absent.